IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NDOKEY ENOW, #435845, 1990859 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-16-4042 |
| SHARON L. BAUCOM, M.D.<br>WARDEN KATHLEEN S. GREEN,<br>WEXFORD HEALTH SOURCES, INC.,<br>BEN OTEYZA, M.D., | *<br><br>* | |
| Defendants | * | |

***

## **MEMORANDUM OPINION**

This matter is before me on self-represented plaintiff Ndokey Enow's Motion for a Temporary Restraining Order ("TRO"), ECF No. 3. He claims that he is blind in his right eye and the vision in his left eye is blurry due to a cataract. Pl.'s Mem. 2–3, ECF No. 3-1. He seeks "a medically appropriate course of eye examination and treatment . . . to restore and maintain the full functioning" of his vision in both eyes, including and an examination "by a qualified eye specialist." Pl.'s Mot. 1–2.[1] Because Enow has not shown a likelihood of irreparable harm, I will deny his Motion.

---

[1] The parties fully briefed Plaintiff's Motion. ECF Nos. 3-1, 25, 28, 29. Enow filed a Declaration in support of his Motion, ECF No. 3-2, and verified his Reply, Pl.'s Reply 14. Defendants filed Declarations from Sharon L. Baucom, M.D., ECF No. 25-1, and Ben E. Oteyza, M.D., ECF No. 25-2, and Enow filed his medical records, ECF Nos. 28-2, 29-2. A hearing is not necessary. *See* Loc. R. 105.6.

In addition to the claim based on his alleged eye injuries, the other claim moving forward in this case is Plaintiff's allegation that he suffered a concussion on November 19, 2015, when a fellow inmate struck him in the head with a hard object, and he has blackouts, constant cluster migraine headaches, and neck and back pain as a result. Compl. 6, ECF No. 1; *see* Order, ECF No. 5 (directing Defendants to respond to this claim as well as Plaintiff's Motion for a TRO). The briefing of Plaintiff's Motion also addresses the merits of Plaintiff's claims of injury from a concussion. Also pending are Enow's Motion for Summary Judgment, ECF No. 14; Wexford

**Background**

Enow is incarcerated at Eastern Correctional Institution in Westover, Maryland. He claims that he "was physically assaulted by a fellow inmate" on January 13, 2015, and "the inmate injured [his] right eye and rendered [him] partially blind." Pl.'s Decl. ¶ 1. He asserts that on January 15, 2015, Sandra Cremers, M.D., an ophthalmologist, diagnosed him with "traumatic iritis" and "conjunctival hemorrhage" of the right eyes and cataracts in both eyes and recommended that he remain under medical supervision. Pl.'s Mem. 1–2; *see* Pl.'s Decl. ¶ 2. He also claims that he was referred for an eye examination on March 5, 2015 because his vision was blurry in his left eye, and he was blind in his right eye. Pl.'s Mem. 2. On March 12, 2015, he requested an eye examination for the "traumatic irititis [he] suffered on that eye since 01/13/2015," as well as the pain and he experienced and the conjunctival hemorrhage. Sick Call Request, ECF No. 28-2, at 3. According to Enow, he was seen on March 18, 2015 by optometrist Dr. Alesha Spellman-Smith, who agreed with Dr. Cremers and prescribed eyeglasses for him. Pl.'s Reply ¶ 3.

On March 31, 2015, he again sought an eye examination for his blurry vision. Sick Call Request, ECF No. 28-2, at 4. Dr. Spellman-Smith examined his right eye again on April 8, 2015, *id.*, and "diagnosed the plaintiff as legally blind in his right eye with a MAC scar." Pl.'s Reply ¶ 4. Then, on April 20, 2015, Dr. Spellman-Smith, "made [a] procedure/test request based on

---

and Oteyza's Motion to Dismiss or, in the Alternative, Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 22, and Defendants former Warden Kathleen Green and Baucom's Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 31. I will address the merits of Plaintiff's claims when the pending motions all are ripe.

In her Declaration, Baucom, states that she, as Director of Clinical Services for the Maryland Department of Public Safety and Correctional Services ("DPSCS"), does not have supervisory authority over the staff of the private health care providers that DPSCS contracts with to provide medical care to inmates (including Enow) housed in its facilities. Baucom Decl. ¶¶ 1–2, 4.

trauma" he experienced in January 2015. Pl.'s Reply ¶ 5. But, he claims, he has not received "any course of further eye examination despite his repeated requests." *Id.*; *see* Pl.'s Mem. 2; Pl.'s Decl. ¶ 4. The medical records Plaintiff submitted show that he received a routine eye examination on-site on October 29, 2015. Med. Rec., ECF No. 29-2, at 10.

Enow claims to suffer recurrent pain from his eye injury, macular degeneration, cataracts, blurry distance vision, eye fatigue, light sensitivity, cluster migraine headaches and watery, burning, and itching eyes. Pl.'s Mem. 2; Pl.'s Reply ¶ 5. Further, he alleges that he is in danger of permanent loss of vision in both eyes unless his Motion is granted. Pl.'s Mem. 4; Pl.'s Decl. ¶ 6.

Ben E. Oteyza, M.D., who is a physician licensed by the State of Maryland's Board of Physicians, is employed by Wexford Health Sources, Inc. ("Wexford"), to provide physician services to inmates in the DPSCS system. Oteyza Decl. ¶ 1. In his Declaration,[2] Oteyza states that Enow "has a history of blurry distance vision in his left eye for which he has prescription eyeglasses." *Id.* ¶ 4. Enow did not complain about headaches or vision problems during his December 18, 2015 physical examination or afterwards. *Id.* ¶¶ 8, 10. Indeed, Enow had submitted a sick call request for a "normal headache" on July 6, 2015, but after that, Enow did not submit any sick call requests for headaches, dizziness or blackouts until December 27, 2016. *Id.* ¶ 9.

Oteyza notes that, in May 2016, Plaintiff did ask to see an ophthalmologist regarding his allegedly worsening vision due to cataracts, but he did not complain about "any other eye

---

[2] The Declaration is identical to Oteyza's Declaration filed on April 25, 2017 with Oteyza and Wexford's Motion to Dismiss or, in the Alternative, Cross-Motion for Summary Judgment. ECF No. 22-5. In support of their motion, Oteyza and Wexford also filed 73 pages of Enow's medical records, ECF No. 22-4, which Oteyza summarized in the Declaration. These medical records were not resubmitted with the Response to the Motion for a Temporary Restraining Order, presumably because they are already part of the record.

problems or headaches." *Id.* ¶ 11. "Plaintiff was seen by optometry on December 8, 2016, but there is no indication Plaintiff reported any complaints of headaches, dizziness, or blackouts." *Id.*

Oteyza asserts that, while Enow submitted a sick call request on December 27, 2016, complaining that he "was involved in an altercation" the day before, "[t]here is no medical documentation that Enow was assaulted on December 26, 2016." *Id.* ¶ 9. When Enow "was evaluated by a nurse at sick call for complaints of headaches, nose bleeding, body pain and dizziness on December 28, 2016," his "sclera was red, but Plaintiff was otherwise alert and oriented, with no signs of nasal bleeding." After his December 28, 2016, examination, Enow did not submit any additional sick call slips for headaches, dizziness, or blackouts. *Id.* ¶ 10. Oteyza states that Plaintiff's one complaint about "vision problems" since November 19, 2015 was in January 2017, when he asked for "new prescription eyeglasses because his cellmate allegedly broke them." *Id.*

Enow states that on May 3, 2016, he consulted with Nicole Frey, RN regarding his vision problems. Pl.'s Reply ¶ 6. Specifically, he stated that he had "medical records stating [his] diagnosis of blindness and need[ed] to see opthomology [sic]." Med. Rec., ECF No. 29-2, at 15. He claims that, on May 31, 2016, he consulted Deborah Tabulov, NP in the chronic care clinic and she "placed a specialty service request to optometry for a general eye exam," but it was ignored. *Id.* ¶ 7. According to Enow, he had had an eye examination on April 8, 2015, but did not receive another one until his May 8, 2017 "optometry eye examination for prescription eyeglasses at the on-site clinic." *Id.* ¶ 8.

## Motion for a Preliminary Injunction

A preliminary injunction is distinguished from a TRO only by the difference in notice to the nonmoving party and by the duration of the injunction. *U.S. Dep't of Labor v. Wolf Run*

*Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006) (comparing Fed. R. Civ. P. 65(a) with Fed. R. Civ. P. 65(b)). Defendants have received notice and I will treat the Motion as one for a preliminary injunction.

The purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). As a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, Enow must "establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Id.* at 20; *see also Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). In the prison context, courts should grant preliminary injunctive relief only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

I do not take Enow's medical concerns lightly. Yet, Enow acknowledges that he recently was seen in the optometry clinic for his vision concerns. And, he has not submitted any proof of irreparable harm to substantiate his claims of medical urgency. Without such proof, I cannot conclude that Enow will be irreparably harmed. Under these circumstances, Enow does not meet his burden to show that he is likely to succeed on the merits or that he faces irreparable harm; nor has he presented exceptional and compelling circumstances to tip the balance of equities in his favor or met his burden to show that granting an injunction will serve the public interest. Enow

fails to sustain the heavy burden required for preliminary injunctive relief, and the Motion will be denied in a separate order.


<u>May 24, 2017</u>                                                              \_\_\_\_\_/S/_____
Date                                                                          Paul W. Grimm
                                                                              United States District Judge